IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

VIRGINIA ROSS,              )
                            )
        Plaintiff,          )   Case No. 04-1004-KI
                            )
    vs.                     )   OPINION
                            )
JOANNE B. BARNHART,         )
Commissioner of Social Security, )
                            )
        Defendant.          )

    Rory Linerud
    P. O. Box 1105
    Salem, Oregon 97308

        Attorney for Plaintiff

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Craig J. Casey
    Assistant United States Attorney
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon 97204

Joanne E. Dantonio
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

   Attorneys for Defendant

KING, Judge:

Plaintiff Virginia Ross brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## BACKGROUND

Ross filed applications for DIB and SSI with protected filing dates of October 26, 2001. The applications were denied initially and upon reconsideration.  After a timely request for a hearing, Ross, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on November 19, 2003.

On February 22, 2004, the ALJ issued a decision finding that Ross was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I. The ALJ's Decision

The ALJ found that Ross had severe impairments of a disorder of the back, depression, anxiety, and alcoholism and non-severe impairments of a history of breast cancer status post surgery and chemotherapy, status post back and neck surgeries in the 1980s, and Raynaud's disease. He also determined that none of Ross's impairments, either singularly or in combination, met or equaled any listed impairment. The ALJ found that Ross was not fully credible concerning her testimony of an inability to perform any basic work activities. Based on his determination of Ross's residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ross could return to her former work of mail clerk and office helper, and consequently, was not disabled under the Act.

II. Ross's History

Ross, who was 62 years old at the time of the hearing, claims to have been disabled as of September 27, 2000, because of neck and back pain, Raynaud's disease, depression, a history of breast cancer status post treatment, anxiety, and stomach pain. She has a GED and work experience as a general clerical worker, mail clerk, waitress, interpreter, seam checker at a

cannery, nursing assistant, and bartender. Ross had a history of drug abuse, in the distant past, and more recently, alcoholism with periods of sobriety and relapses. She has suffered depression in various degrees throughout her life and has attempted suicide.

Dr. Wicher, a psychologist, examined Ross on November 4, 2001. Dr. Wicher concluded that the primary obstacle to Ross's return to work was her problem with concentration and the cognitive confusion she demonstrated during his examination of her. He noted that she performed relatively adequately during his examination partly because it was a structured setting and he helped her complete tasks by containing her and bringing her back to the task at hand. Dr. Wicher thought it possible that, in a job, Ross would have a more difficult time sustaining concentration and comprehending instructions consistently. The result would be that Ross might find that she could only perform simpler tasks than before and must rely on repetition of activities rather than work at jobs which would require frequent learning of new information.

Ross testified that after 30 minutes of walking around or sitting, she has neck and lower back pain that requires her to lie down. Her hands swell for two to four hours a day to the extent that she cannot hold a pencil. For several years Ross has suffered from stomach problems that cause bloating, pain, and constipation. Ross complains of depression, trouble concentrating, trouble sleeping, and nerves.

Ross's son testified about her decline over the last five years, including her increased depression and her physical discomfort. Ross's son noted that if he took his mother out to dinner, she would fidget a lot and frequently have to switch between sitting and standing due to discomfort.

# DISCUSSION

I. <u>Rejection of Testimony</u>

    A. <u>Ross's Testimony</u>

Ross contends that the ALJ improperly rejected her testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. <u>Id.</u> at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. <u>Id.</u> at 1284.

In rejecting Ross's credibility, the ALJ noted that no cause had been found for Ross's abdominal pain, that Dr. Berselli reported that he was not sure why Ross complained of neck and back pain based on his examination, and that Dr. Penner reported that Ross's complaints of neck and back pain were out of proportion to physical findings. Although the ALJ cannot reject

subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ also found that Ross was independent in her activities of daily living. The record indicates that Ross lived alone until recently when she rented a room because of financial problems, cooked her own food, helped with the cleaning and dishes, did her own laundry, and bought her own groceries.

I conclude that the ALJ has made specific findings stating clear and convincing reasons for rejecting Ross's testimony.

B. Lay Testimony

Ross contends that the ALJ improperly discounted the testimony of her son, Moses Ross. The ALJ found that Moses Ross was credible in that he was reporting his observation of the behavior his mother demonstrated but was not knowledgeable in the medical or vocational field and was thus unable to render an opinion on how his mother's impairments had an impact on her overall abilities to perform basic work activities. The ALJ also found that the testimony was not supported by the medical records or the opinions of the treating or examining physicians.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Moses Ross testified about his observations of his mother's condition and did not give an opinion as to whether she could return to work. To the extent that the ALJ discredited Moses

PAGE 8 - OPINION

Ross's testimony, he did so for one of the same reasons that he rejected the claimant's testimony, that the level of symptoms was not supported by the medical records. That is a reason germane to Moses Ross and is supported by substantial evidence in the record. The rejection complied with the legal standard.

II.     Physicians' Opinions

Ross contends that the ALJ did not consider the limitation recommended by the DDS physicians, Dr. Lahr and Dr. McDonald, that she could not perform overhead reaching on a frequent basis. Tr. 339. Instead, the ALJ only limited Ross to no constant reaching, a higher level of functional capacity, and gave no reason for rejecting this part of the DDS physicians' opinions. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the

record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

The cases discuss whether a nonexamining physician's opinion, without more, is sufficient substantial evidence to reject the opinion of a treating or examining physician.  Ross's situation is different in that the two nonexamining DDS physicians limited her functional capacity to a greater extent than any treating or examining physician.  Typically, the nonexamining physician, who either does a record review as was done here or testifies at the hearing, recommends fewer limitations than treating or examining physicians.  Thus, I do not believe that the case cited by the Commissioner, or any other of which I am aware, persuasively supports an argument that the ALJ does not have to give *any* reason for rejecting the opinions of Dr. Lahr and Dr. McDonald.  Consequently, I conclude that the ALJ erred when he gave no reason for failing to put their limitation, that Ross cannot perform overhead reaching on a frequent basis, into the hypothetical posed to the vocational expert.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  Id.  Thus, the vocational expert's testimony about Ross's ability to perform her past work is without evidentiary value.

III.     Statement of Hypothetical

Ross notes that the ALJ found that she had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  She

contends that the ALJ erred when the only mental limitation he put in the hypothetical was a limitation for simple, routine, repetitive work, which Ross contends only discusses the complexity of the work or instructions. Ross argues that this limitation does not address her difficulties in working with the public, coworkers, or supervisors, does not address her inability to keep pace and persistence, and does not address her inability to concentrate and focus to stay on task. In particular, Ross contends that the jobs chosen by the ALJ, mail clerk and general clerk, are beyond her capabilities.

The degrees of limitation on which Ross bases her argument (none, mild, moderate, marked, extreme) are the ratings of functional limitations in the "B" criteria of the Listings on the Psychiatric Review Technique Form used by the ALJ in step three of the sequential evaluation to determine if the claimant's impairments are equivalent to one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§404.1520a(c) (DIB), 416.920a(c) (SSI). If the impairments are not equivalent, the ALJ goes on in step four to assess the claimant's residual functional capacity. That stage of the analysis does not use these ratings.

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a
> and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8P, *4.

Thus, the moderate degrees of limitations on which Ross bases her argument are not transferred directly into the residual functional capacity determination. Instead, the ALJ interprets them into a more detailed assessment used in step four of the evaluation. The ALJ's limitation in the residual functional capacity for simple, routine, repetitive work is supported by Dr. Wicher's opinion, which directly addressed Ross's concentration problems. The ALJ did fail, however, either to address any limitation Ross has in dealing with the public, coworkers, or supervisors or to explain why no limitation is necessary.

Ross further contends that although the ALJ found that she was limited to sitting or standing up to 6 hours of an 8-hour day and limited to lifting 20 pounds occasionally and 10 pounds frequently, he did not incorporate these limits into the hypothetical.

As the Commissioner notes, when the ALJ posed the hypothetical to the vocational expert he limited it to light work. The Dictionary of Occupational Titles, Appendix C, defines light work as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

PAGE 12 - OPINION

The lifting limitation Ross seeks is included word for word within the definition of light work. The definition also allows for walking or standing to a significant degree or sitting most of the time along with pushing and/or pulling of arm or leg controls. Although the definition does not expressly quantify the amount of sitting or standing, the limitation that Ross seeks falls within the explanation. I conclude that the ALJ did not err when he chose to use the term "light work" in his hypothetical rather than spelling out the specifics which define the term.

IV.   <u>Non-severe Impairments</u>

Ross contends that the ALJ improperly found that impairments she has from Raynaud's disease and a past history of back and neck surgeries are non-severe. She argues that this error caused the ALJ to fail to consider her inability to sit or stand greater than 6 hours of an 8-hour day, lift 20 pounds occasionally or 10 pounds frequently, and perform frequent reaching in all directions. The ALJ's treatment of these limitations is discussed above in a different context. Whether the limitations are the result of a severe or non-severe impairment does not change the analysis.

Ross also argues that the ALJ failed to develop the record in several of the ways discussed above. She contends that he failed to develop further evidence regarding those failures but does not give any examples of what else should have been done.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests. Ambiguous evidence or the

ALJ's finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry, which can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing or keeping the record open after the hearing to allow the record to be supplemented. Id.

The ALJ did not find that anything occurred which triggered his duty to conduct further inquiry and I also see nothing in the record needing clarification. Ross has not explained what areas needed further inquiry. I conclude that the ALJ fulfilled his duty to fully and fairly develop the record.

V.     Remedy

The last issue is whether I should make a finding of disability or whether the case must be remanded for further proceedings.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

The ALJ failed to give sufficient reasons for not crediting the opinions of the DDS physicians, Dr. Lahr and Dr. McDonald, that Ross could not perform overhead reaching on a frequent basis. I cannot say that it is clear from the record that Ross is unable to perform gainful employment. Thus, I will remand the action to allow the ALJ to reconsider the doctors' opinions and either revise the hypothetical and take additional vocational expert testimony if he agrees that Ross suffers from this limitation, or provide sufficient reasons to discredit the opinions if he does not agree that Ross suffers from this limitation. Likewise, the ALJ should reconsider whether Ross has any limitations in dealing with the public, coworkers, or supervisors.

///

///

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

Dated this     13th      day of April, 2005.

                                                  /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge